UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

M-I Drilling Fluids UK Ltd.,

           Plaintiff,

    v.

Dynamic Air Inc.,

           Defendant.

**MEMORANDUM OPINION AND ORDER**
Civil No. 14-4857 ADM/HB

_____

Scott J. Pivnick, Esq., Alston & Bird, LLP, Washington, DC, on behalf of Plaintiff.

Kevin P. Hickey, Esq., Bassford Remele, PA, Minneapolis, MN, on behalf of Defendant.
_____

## I.  INTRODUCTION

On January 29, 2015 the undersigned United States District Judge heard oral argument on Defendant Dynamic Air Inc.'s ("Dynamic Air") Motion to Dismiss [Docket No. 16]. For the reasons discussed below, Dynamic Air's motion is denied.

## II.  BACKGROUND

This patent infringement action presents a single but interesting question: does the United States Patent Act ("Patent Act") apply on U.S.-flagged ships in international waters? The facts giving rise to this lawsuit are recited in this Court's February 2014 Order in a related case, Civil No. 13-2385, and will not be repeated in full here. See M-I Drilling Fluids UK Ltd. v. Dynamic Air Inc., No. 13-2385, 2014 U.S. Dist. LEXIS 14804 (D. Minn. Feb. 6, 2014) (hereinafter M-I Drilling Fluids, Case No. 13-2385). In short, Plaintiff M-I Drilling Fluids UK, Ltd. ("M-I Drilling") alleges Dynamic Air infringed on its patented CLEANCUT® pneumatic

conveyance system technology[1] related to transporting oil well waste from oil rigs.[2]  Compl. [Docket No. 1].  When oil wells are drilled, cuttings from the drilling are brought to the surface. Id. ¶ 5.  CLEANCUT® collects and contains the waste, allowing it to be transported in an environmentally friendly way.  Id. ¶ 7.  M-I Drilling seeks damages and a permanent injunction to enjoin further infringement of its patents by Dynamic Air.

**A. Parties**

This suit involves the Brazilian subsidiaries of M-I Drilling and Dynamic Air.  M-I Drilling is a United Kingdom limited-liability company with its principal place of business in the UK.  Id. ¶ 2.  M-I Drilling is a "supplier of drilling fluid systems and equipment engineered to improve drilling performance."  Id.  M-I Swaco do Brasil ("M-I Brazil") is a sister company and customer of M-I Drilling.  Id. ¶ 17.

Dynamic Air is a Minnesota corporation with its principal place of business in St. Paul, Minnesota.  Id. ¶ 3.  Dynamic Air is a developer, designer, and manufacturer of pneumatic conveyance systems.  Id. ¶ 14.  Dynamic Air has been involved in the pneumatic conveyance industry since 1969.  Dynamic Air Ltda. ("Dynamic Ltda") is Dynamic Air's Brazilian subsidiary with its principal place of business in Brazil.  Id. ¶ 17.

Petroleo Brasilerio ("Petrobras") is a Brazilian company that issued a request for proposal for a pneumatic conveyance system to contain and transport drill cuttings from Petrobras-owned Brazilian oil rigs.  Id.

---

[1] A pneumonic conveyance system uses "compressed air or gas to move bulk solids from one location to another."  Compl. ¶ 5.

[2] M-I Drilling alleges infringement of a total of five patents "directed to methods, systems, and apparatuses used for collecting, conveying, transporting, and storing . . . drill cuttings, in an environmentally safe way."  Id. ¶¶ 1, 3.  The patents are U.S. Patent Nos. 6,702,539; 6,709,217; 7,033,124; 7,186,062; and 7,544,018 ("Asserted Patents").  Id. ¶ 1.

2

**B.  M-I Brazil and Dynamic Ltda submit proposals to Petrobas**

Between October 2011 and January 2012, Petrobras requested proposals for a pneumatic conveyance system to remove drill cuttings from its oil rigs located in international waters off the coast of Brazil.  Id. ¶ 17.  M-I Brazil and Dynamic Ltda submitted proposals.  Id.  Dynamic Ltda was awarded the contract and worked with Dynamic Air to direct the "design, manufacture, and installation of certain pneumatic conveyance systems for Petrobras."  Id. ¶ 19.  Dynamic Air directed Dynamic Ltda to install the conveyance and containment systems aboard at least two U.S.-flagged ships.  Id. ¶ 20.  Dynamic Air provides "onsite support" for these systems, "including supervising and assisting in the installation and startup of the systems" aboard the ships.  Id. ¶ 21.

In January 2013, M-I Drilling alleged that Dynamic Air either installed or directed the installation of a pneumatic conveyance system on the U.S.-flagged ship HOS *Resolution* ("*Resolution*"), located in international waters.  Id. ¶ 23.  In February 2013, the pneumatic conveyance system was used to transport drill cuttings from an offshore Petrobras oil rig to the *Resolution*.  Id. ¶ 24.

In August 2013, M-I Drilling alleged that another Dynamic Air pneumatic conveyance system was manufactured, sold, delivered and installed aboard the U.S.-flagged HOS *Pinnacle* ("*Pinnacle*"), also located in international waters off the coast of Brazil.  Id. ¶ 26.  This system was also used to transport drill cuttings from another offshore Petrobras oil rig to the *Pinnacle*. Id.

M-I Drilling alleges these installed systems aboard the *Resolution* and *Pinnacle* infringe upon its Asserted Patents.  Id. ¶¶ 28-29.

**C.  M-I Drilling files several lawsuits**

Three lawsuits are pending based on the facts described above.  In August 2013, M-I Drilling, individually or in conjunction with M-I Brazil, sued Dynamic Ltda in Brazil.  Def.'s Mem. Supp. Mot. Dismiss [Docket No. 18] 2.  According to the parties, that case is proceeding on the merits in the Brazilian Court system.  Id.

M-I Drilling also filed a patent infringement complaint against Dynamic Air and Dynamic Ltda in this Court in August 2013.  In February 2014, the undersigned dismissed the Complaint without prejudice based on a finding that the Court lacked personal jurisdiction over Dynamic Ltda and for failure to state a claim against Dynamic Air.  M-I Drilling Fluids, Case No. 13-2385.  In March 2014, the undersigned vacated its previous dismissal of Dynamic Air Ltda from the lawsuit.  See M-I Drilling Fluids UK Ltd. v. Dynamic Air Inc., Case No. 13-2385, 2014 U.S. Dist. LEXIS 31007 (D. Minn. Mar. 11, 2014).  M-I Drilling argued the Court erred by concluding, *sua sponte*, that it lacked personal jurisdiction over Dynamic Air Ltda.  M-I Drilling also argued that the Court erred in concluding that M-I Drilling failed to serve Dynamic Air Ltda because it was in the act of completing the lengthy international service process.  Out of "an abundance of caution and in the interest of fairness," M-I Drilling was granted the opportunity to complete its efforts to serve Dynamic Air Ltda.  Because the procedure for effectuating service of Dynamic Air Ltda is ongoing, M-I Drilling filed an amended complaint against Dynamic Air in November 2014, seeking to cure the deficiencies highlighted the Court's February 2014 Order.

## III.  DISCUSSION

The parties agree that the sole issue presented by this motion is whether the U.S. Patent Act applies to protect M-I Drilling's patented technology in use on board the *Resolution* and the

*Pinnacle*, U.S-flagged ships in international waters.[3] The parties dispute whether Dynamic Air's motion is properly considered as a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) or for failure to state a claim under Rule 12(b)(6). M-I Drilling cites <u>Litecubes, LLC v. Northern Light Prods., Inc.</u> for the proposition that the geographic location of alleged infringing activity is an element of the claim, not a jurisdictional question. 523 F.3d 1353, 1362 (Fed. Cir. 2008). Dynamic Air contests the applicability of <u>Litecubes</u>, but admits "there is no difference in the outcome if the issue is analyzed as one of subject matter jurisdiction or substantive patent law." Def.'s Rep. Mem. [Docket No. 25] 8.

Subject matter jurisdiction exists in patent cases under the "well-pleaded complaint" rule where a complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law. <u>Litecubes</u>, 523 F.3d at 1360 (citing <u>AT&T Co. v. Integrated Network Corp.</u>, 972 F.2d 1321, 1323-24 (Fed. Cir. 1992)). In this case, the Court agrees that M-I Drilling has sufficiently pled a violation of the Patent Act and thus Dynamic Air's motion will be considered

---

[3] International waters, or the high seas, are defined as "the ocean waters beyond the jurisdiction of any country. Under traditional international law, the high seas began 3 miles from the coastline. Under the 1982 United Nations Convention on the Law of the Sea, which is currently the generally accepted international law, the high seas begin 200 nautical miles from the coastline, outside any country's exclusive economic zone." <u>Black's Law Dictionary</u> 1550 (10th ed. 2014). The parties dispute whether the U.S.-flagged ships at issue in this case are in international waters or the territorial waters of Brazil. It is not clear that this distinction will affect the merits of this case. <u>See</u> Restatement (Third) of the Foreign Relations Law of the U.S. § 502 (1987) cmt. (d) ("Jurisdiction of flag state") (noting the "flag state has jurisdiction to prescribe with respect to any activity aboard the ship, but such jurisdiction is not <u>exclusive</u> when the ship is in a port or internal waters of another state") (emphasis added). While discussion of this nuance may be further explored on a motion for summary judgment, the U.S. vessels at issue are presumed to be in international waters here because all facts as pled in the Complaint must be taken as true on a motion to dismiss. Fed. R. Civ. P. 12(b)(6).

as one to dismiss for failure to state a claim.[4]

## A.  Motion to Dismiss Standard Under Rule 12(b)(6)

Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994) (citation omitted).  However, the factual allegations must "raise a right to relief above the speculative level," and push claims "across the line from conceivable to plausible."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In other words, the complaint must establish more than a "sheer possibility that a defendant has acted unlawfully."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. at 679.  In doing so, the court must draw reasonable inferences in the plaintiff's favor, but it need not make unreasonable inferences or accept unrealistic assertions.  See Brown v. Medtronic, Inc., 628 F.3d 451, 461 (8th Cir. 2010).

## B.  Whether the U.S. Patent Act applies to U.S.-flagged ships

Dynamic Air contends the Patent Act does not apply to the *Resolution* and the *Pinnacle* for two reasons:  first, the Patent Act must be strictly construed, thus prohibiting its application

---

[4] The parties do not dispute the basic rights granted to a patentee by the Patent Act of 1952.  Section 154 gives patent holders the "right to exclude others from making, using, offering for sale, or selling the [patented] invention throughout the United States or importing the invention into the United States."  35 U.S.C. § 154(a)(1).  Section 271 establishes that a patent is infringed when one "without authority makes, uses, offers to sell, or sells any patented invention within the United States or imports into the United States any patented invention during the term of the patent.  Id. § 271(a).

to U.S.-flagged ships absent explicit authorization from Congress; and second, regardless of the Patent Act, the century-old case law relied on by M-I Drilling has been "effectively overruled." Def.'s Mem. Supp. Mot. Dismiss at 20.  M-I Drilling contends that the plain language and legislative history of the Patent Act support its application to U.S. territories which, under the law of the flag doctrine, includes U.S.-flagged ships at high sea.  Moreover, M-I Drilling emphasized that Gardiner v. Howe is the only authority that addresses the precise question presented by this case and, while some courts have questioned its meaning, it has never been explicitly overruled.  9 F. Cas. 1157, 1158 (C.C.D. Mass. 1865).

    **1. Geographic scope of U.S. patent rights**

The Constitution empowers Congress to promote the development of science and the useful arts by granting a limited monopoly to inventors.  Art. I, §8, cl. 8.  The first Patent Act was enacted by Congress in 1790.  Scholarship has not revealed any early history related to the geographic scope of patent rights in the United States.  See Moy's Walker on Patents § 12:1. (4th ed. 2012).  The first two disputes about the scope of patent rights in the United States arose in the late 1800s and were related to marine activities.  Id.  The first dispute, Brown v. Duchesne, concerned a French vessel conducting commerce in the port of Boston.  60 U.S. (19 How.) 183 (1857).  The vessel was built in France and owned by a Frenchman, but the gaff of the sailing vessel allegedly infringed on the plaintiff's United States patent.  Id. at 194.  The Supreme Court affirmed the lower court's ruling and held "the rights of property and exclusive use granted to a patentee does not extend to a foreign vessel lawfully entering one of our ports."  Id. at 198.  The Court concluded that a patentee's rights were "confined within the limits of the United States" and any use of one's protected invention "outside of the jurisdiction of the United States is not an infringement of his rights."  Id. at 195.

The second early dispute, Gardiner v. Howe, is more directly on point. 9 F. Cas. at 1158. Defendant was the owner of a United States vessel that was commanded by an American captain at high sea. Id. The ship allegedly infringed the plaintiff's patent related to sailing technology.[5] The defendant objected to an instruction that infringement would occur on the vessel, regardless of whether it was in port or at sea. Moy's Walker, supra, at § 12:5. The Court disregarded the defendant's reliance on Brown, noting that the vessel in Brown was foreign whereas the defendant's vessel was American. Gardiner, 9 F. Cas. at 1158. In a brief opinion, the Court held "the patent laws of the United States afford no protection to inventions beyond or outside of the jurisdiction of the United States; but this jurisdiction extends to the decks of American vessels on the high seas, as much as it does to all the territory of the country, and for many purposes is even more exclusive." Id.[6] Gardiner has endured critique by two 1970s Court of Claims cases, but no Court has explicitly overruled its holding. See Decca, Ltd. v. U.S., 544 F.2d 1070, 1073 (Ct. Cl. 1976) ("We do not, however, disapprove or overrule Gardiner . . . . We only rely on [it] lightly and with hesitation."); Ocean Sci. & Eng.'g Inc. v. U.S., 595 F.2d 572, 574 (Ct. Cl. 1979) (noting that "it is well to adjudicate cases on other grounds when possible" rather than apply the "fiction that a United States flag ship . . . is an ambulatory portion of United States territory.").

---

[5] Dynamic Air argues Gardiner is distinguishable on the facts because the "instrumentality of the vessel" is not at issue in this case. This is a distinction without a difference, however, as there is no indication that the type of patent at issue influenced the Court's holding.

[6] Notably, the appellate decision affirmed by the Supreme Court in Brown was decided ten years before Gardiner and included a more lengthy discussion about the law of the flag, including a still accurate representation of the doctrine as "[w]hile on the high seas, a vessel is deemed to be part of the territory of the nation to whose citizens it belongs, and under whose flag it sails." Brown v. Duchesne, 4 F. Cas. 369, 370 (C.C.D. Mass. 1855).

In the Patent Act of 1952, Congress expressly stated the geographic limits of patent rights and defined the "United States" as "the United States of America, its territories and possessions." 35 U.S.C. §100(c). At least one commentary on patent law notes the "broad" definition of "United States" in the 1952 Act, which is understood to include "land areas under U.S. Control, U.S. registered vessels at high sea, and space vehicles under U.S. jurisdiction or control." Moy's Walker, supra, at §12.1.

### 2. Law of the flag doctrine

"It is a fundamental principle of customary international law that no state may exercise sovereignty over the high seas." WesternGeco L.L.C. v. Ion Geophysical Corp., 776 F. Supp. 2d 342, 366 (S.D. Tex. 2011) (citing United States v. Louisiana, 394 U.S. 11, 22 (1969)); see also Thomas J. Schoenbaum, Admirality and Maritime Law (5th ed., 2011) ("The doctrine of the high seas holds that these areas are open to all states, and no state may validly subject any part of them to its sovereignty."). Jurisdiction over ships on the high seas is determined by the law of the flag doctrine. Lauritzen v. Larsen, 345 U.S. 571, 585 (1953); see also Restatement (Third) of the Foreign Relations Law of the U.S. § 502 (1987) ("The flag state may exercise jurisdiction to prescribe, to adjudicate, and to enforce, with respect to the ship or any conduct that takes place on the ship.").

The law of the flag doctrine traditionally states that "a merchant ship is part of the territory of the country whose flag she flies, and that actions aboard that ship are subject to the laws of the flag state." United States v. Kun Yun Jho, 534 F.3d 398, 405 (5th Cir. 2008) (citing Cunard S.S. Co. v. Mellon, 262 U.S. 100, 123 (1923)); see also Schoenbaum, supra, at § 2-18 ("Jurisdiction over ships on the high seas is relegated to the flag state."). Each state is entitled to determine the conditions of registration before a ship is permitted to fly that state's flag. Id. §

9

501. International law requires a "genuine link" between the ship and the registering state, which may include the nationality of the ship's owners, nationality of the ship's crew, how often the ship stops in the state's ports, and other considerations. Id. § 501(b) cmt. ("genuine link").

### 3. Legislative history supports application of U.S. patents to U.S. ships

Dynamic Air argues that the 1952 Patent Act narrowed the scope of the Patent Act's applicability to prohibit application of the law of the flag. This argument holds neither fresh nor sea water. The 1952 Patent Act extends patent rights to the territories of the United States, and the law of the flag doctrine stands for the proposition that ships are considered the territory of the country where the ship is registered, as represented by the flag flown on the ship. Nevertheless, Dynamic Air argues that this logical connection should not be drawn because Congress has not explicitly authorized application of the Patent Act to U.S.-flagged ships. See Air Line Stewards & Stewardessess Ass'n v. N.W. Airlines, 267 F.2d 170, 178 (8th Cir. 1959) ("In construing the Railway Labor Act, we have in mind the rule that unless there is an explicit and unequivocal showing of a contrary intent, Acts of Congress are to be given an interpretation which is domestic in nature."). Because the 1952 Patent Act does not explicitly endorse patent rights on U.S.-flagged ships at high sea, Dynamic Air argues there is a gap in the statute that Congress must fill, not the Courts. See Deepsouth Packing Co. v. Laitram Corp., 406 U.S. 518, 531 (1972) ("We would require a clear and certain signal from Congress before approving the position of a litigant who, as respondent here, argues that the beachhead of privilege is wider, and the area of public use narrower, than courts had previously thought."); see also Microsoft Corp. v. AT&T Corp., 550 U.S. 437, 457 (2007) (any alleged "loophole" in the Patent Act is "properly left for Congress to consider, and to close if it finds such action warranted.").

M-I Drilling argues that the 1952 Patent Act does not overturn or disapprove of

Gardiner's rule that U.S. Patent laws extend to American vessels on the high seas. M-I Drilling further contends that relevant legislative history indicates Congress was not only aware of Gardiner's holding, but that the 1952 Patent Act's definition of the United States was "intended to be descriptive rather than limiting." S. Rep. No. 101-266 (1990). In 1990, Congress enacted the Inventions in Outer Space Act, which states that "any invention made, used or sold in outer space on a space object or component thereof under the jurisdiction or control of the United States, shall be considered to be made, used or sold within the United States. . . ." Pub. L. No. 101-580, § 1(a), 104 Stat. 2863 (1990) (codified at 35 U.S.C. § 105). Dynamic Air argues the Space Act shows that when Congress decides to expand patent rights beyond the borders of the United States, it does so explicitly by statute. On the other hand, M-I Drilling argues that the more reasonable conclusion to be drawn from the Senate Judiciary Report discussing the Space Act is that "territory" of the United States was understood to extend to U.S.-flagged ships under Gardiner. The Report states that "some caselaw supports the proposition that the decks of U.S.-flagged vessels may be treated as U.S. territory for jurisdictional purposes in patent infringement proceedings." S. Rep. No. 101-266 (1990). Acknowledging the critiques of Gardiner, the Report cautioned that "the proposition that U.S. patent law may be applied to activities aboard U.S. spacecraft, simply because spacecraft are analogous to ocean vessels, is uncertain at best." Id. M-I Drilling's conclusion that the Space Act was "not a repudiation of the application of the Patent Act to U.S.-flagged ships, but rather an extension of the coverage of U.S.-flagged ships to spacecraft as well" is the most reasonable reading of this legislative history. Pl.'s Mem. Opp. Mot. Dismiss [Docket No. 22] 33.

    **4. Gardiner has not been overruled**

Dynamic Air argues that even if application of Gardiner is not foreclosed by the 1952

11

Patent Act, it has been effectively overruled and should be disregarded. The two primary cases highlighted by Dynamic Air are Cunard S.S. Co. v. Mellon, 262 U.S. 100 (1923), and Air Line Stewards & Stewardesses Ass'n v. N.W. Airlines, Inc., 267 F.2d 170, 175 (1959). These cases resisted extending of the law of the flag by analogy to the particular constitutional and statutory provisions analyzed by each. Ultimately, however, the holdings of these cases are confined to the specific contexts in which they arose and are not directly applicable to the facts of this case.

In Cunard the Supreme Court held that the National Prohibition Act applied to domestic and foreign-flagged ships in United States' territorial waters. 262 U.S. 100 (1923). Central to the Court's conclusion was an analysis of the now-repealed 18th Amendment, which prohibited the manufacture, sale or transportation of liquors within, into, or out of the United States and "all territory subject to the jurisdiction thereof." Id. The Court concluded that the text of the Amendment used the term "territory" in a physical rather than metaphorical sense and interpreted the Prohibition Act coextensively with the 18th Amendment. Id. at 122. The Court declined to extend the 18th Amendment's application to U.S.-flagged ships at high sea, noting that "by the laws of all the foreign ports at which the ships touch [the carrying and consumption of alcohol] is permitted and by the laws of some it is required." Id. 262 U.S. at 119.

The Court also characterized the law of the flag as a "figure of speech, a metaphor" and concluded that "the jurisdiction which it is intended to describe arises out of the nationality of the ship . . . and partakes more of the characteristics of personal than territorial sovereignty." Cunard's reference to the law of the flag as a "fiction" was a common expression used to recognize "that the notion that a ship is floating on part of the territory of the flag state is a fiction." Restatement (Third) of the Foreign Relations Law of the U.S., supra § 502, reporter's notes at 3. Subsequent Supreme Court precedent confirms that the law of the flag is applied on

the "pragmatic basis that there must be some law on shipboard, that it cannot change at every change of waters, and no experience shows a better rule than that of the state that owns her." Lauritzen, 345 U.S. at 585; see also McCulloch v. Sociedad Nacional De Marineros De Hond., 372 U.S. 10, 21 (1963) (noting the law of the flag, which ordinarily governs the internal affairs of a ship, is a well-established rule of international law). Finally, it is worth nothing that in Cunard, the Court was trying to protect Congress' intent to prohibit the manufactuer or sale of liquor within U.S. territory, whereas here, the Court must seek to preserve the central purpose of the Patent Act, protecting patentee's rights.

In Northwest Airlines, the Eighth Circuit concluded that the Railway Labor Act did not apply to employees of a common carrier by air who were hired outside of the U.S. and performed services between locations outside of the continental United States. 267 F.2d 170, 175 (1959). The Court considered the specific language of the Railway Labor Act, which incorporates the Interstate Commerce Act, in concluding that carriers by air are covered only to the extent that the commerce or transportation they are involved with takes place within the United States. Id. at 175.

Northwest Airlines is distinguishable from the present case for at least two reasons. First, the legislative history relating to the Space Act provides a reasoned basis for concluding that Congress intended the definition of the United States and its "territories" to apply to U.S.-flagged ships at high sea. Given the case law supporting this proposition, it is reasonable to conclude that Congress would have taken action to forbid such application if desired. The parties have not cited, and the Court is not aware, of any analogous legislative history related to the Railway Labor Act or the Interstate Commerce Act. Second, because Northwest Airlines was a labor case, the policy implications of extending the Railway Labor Act to the workers on

all U.S.-flagged aircraft operating outside of the United States were far more complex than extending a patentee's rights to infringing technology on U.S.-flagged ships at high sea. Extending M-I Drilling's patent rights to the *Resolution* and the *Pinnacle* is far more analogous to extending patent rights to U.S.-flagged spacecraft. Even before Congress passed the Space Act, it was arguable that there were " no conceivable policy grounds for *not* placing U.S. spacecraft within U.S. patent law." Glenn H. Reynolds, SPACE LAW FORUM: Legislative Comment: The Patents in Space Act, 3 Harv. J. Law & Tec 13, 24 (1990). Extending patent protection to technology on U.S.-flagged ships is consistent with this rationale, as well as the purpose and intent of the Patent Act. The same cannot be said for extending U.S. labor law protections to workers on U.S. aircraft operating outside the United States.

Finally, Dynamic Air urges reliance on the most recent case to consider Gardiner, WesternGeco L.L.C. v. Ion Geophysical Corp., for a "legal road map to conclude that Gardiner is not controlling." Def.'s Mem. Supp. Mot. Dismiss 21. The Court concludes the opposite; WesternGeco affirms that Gardiner is good law and also applies the law of the flag to a patent case. At issue in WesternGeco was whether patent-protected technology for seismic mapping of the subsurface ocean floor to facilitate natural resource exploration and management was being infringed when deployed behind a Norwegian-flagged ship (the *Geo Celtic*) in the Chukchi Sea off the coast of Alaska. 776 F. Supp. 2d 342, 347 (S.D. Tex. 2011). The Court reviewed the law of the flag doctrine in the context of international law and also discussed Brown, Gardiner, and related cases, including those critical of Gardiner. Nevertheless, the Court applied the law of the flag and, consistent with Brown and international law, the Court concluded that "the law of the flag doctrine instructs us that the *Geo Celtic* is subject to the laws of Norway." Id. 776 F. Supp. 2d at 367. Dynamic Air posits that because the Patent Act did not apply in WesternGeco where

14

the alleged infringement was a mere 100 miles off the coast of Alaska, "it is hard to fathom how U.S. patent law might apply to acts occurring in the high seas or foreign waters thousands of miles away from the United States." WesternGeco's conclusion was not driven by proximity to the flag country, nor was it due to proximity of the territorial jurisdiction.  Rather, WesternGeco applied the law of the flag, consistent with Brown and Gardiner, just as the Court must do here.

Answering the interesting question posed by this case is not a clear cut or easy decision. Nevertheless, based on the relevant legislative history and the greater weight of case law, protection of M-I Drilling's pneumatic conveyance system under the Patent Act extends to the U.S.-flagged ships, the *Resolution* and the *Pinnacle*.  The doctrine of the flag must be saluted under the facts of this case.

### IV.  CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss [Docket No. 16] is **DENIED**.

BY THE COURT:


    s/Ann D. Montgomery  
ANN D. MONTGOMERY  
U.S. DISTRICT JUDGE

Dated:  April 10, 2015.