## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| M-I DRILLING FLUIDS UK LTD. and M-I LLC, | Civil No. 14-4857 (JRT/HB) |
| Plaintiffs/Counter-Defendants, | |
| v. | **MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION** |
| DYNAMIC AIR INC., | |
| Defendant/Counter-Claimant. | |

Adam D. Swain and Scott J. Pivnick, **ALSTON & BIRD LLP**, 950 F Street N.W., Washington, D.C.   20004; Patrick J. Flinn, **ALSTON & BIRD LLP**, 1201 West Peachtree Street, Atlanta, GA   30309; and Casey A. Kniser and Eric H. Chadwick, **PATTERSON, THUENTE, CHRISTENSEN, PEDERSEN, PA,** 80 South Eighth Street, Suite 4800, Minneapolis, MN 55402, for M-I Drilling Fluids UK Ltd. and M-I LLC.

Alan G. Carlson, Nathan Louwagie, and Todd S. Werner, **CARLSON CASPERS VANDENBURGH LINDQUIST & SCHUMAN PA**, 225 South Sixth Street, Suite 4200, Minneapolis, MN 55402 for Dynamic Air Inc.

Pursuant to 35 U.S.C. § 285, 28 U.S.C. § 1927, and the Court's inherent powers, Defendant Dynamic Air Inc. ("DAI") filed a motion for reasonable attorney fees, expert witness fees, and costs incurred by DAI in defending against patent infringement claims brought by Plaintiffs M-I Drilling Fluids UK Ltd. and M-I LLC (collectively "M-I"). DAI further moved for costs associated with this case pursuant to Fed. R. Civ. P. 54(d). DAI brought this motion at the conclusion of protracted and contentious litigation against M-I.

M-I first brought a patent infringement action against DAI in 2013 (referred to as "the 2013 Minnesota case"). The court dismissed M-I's claims without prejudice because M-I had not "alleged enough factual specifics concerning [DAI]" to state a claim for relief. *M-I Drilling Fluids UK Ltd. v. Dynamic Air Inc.*, No. 13-2385 (ADM/HB), 2014 WL 494680, at *7 (D. Minn. Feb. 6, 2014).[1] In 2014, M-I filed another patent infringement against DAI, this time including more detailed allegations in its complaint. After conducting extensive discovery and amending its complaint, M-I dismissed its action against DAI. M-I "judg[ed] that pursuit of the indirect infringement case against DAI did not justify the effort." (Decl. of Scott Pivnick ("Pivnick Decl.") ¶ 17, June 24, 2016, Docket No. 246.) In June 2016, DAI brought this motion seeking attorney fees from M-I.

United States Magistrate Judge Hildy Bowbeer issued a Report and Recommendation ("R&R") on February 3, 2017, recommending that the Court award DAI attorney fees and costs under § 285 and Fed. R. Civ. P. 54(d) respectively. (R&R at 36, 38-39, Feb. 3, 2017, Docket No. 270.) The Magistrate Judge found that an award of other sanctions was inappropriate.

---

[1] This opinion was later withdrawn "as to the issue of personal jurisdiction over Dynamic Air Ltda.," but nonetheless remains in force as to DAI. *M-I Drilling Fluids UK Ltd. v. Dynamic Air Inc.*, No. 13-2385, 2014 WL 991129, at *2 (D. Minn. Mar. 11, 2014). The 2013 Minnesota case continues to be relevant in this matter because "the alter ego doctrine, discussed by both parties in their arguments [in the 2013 Minnesota case], relates directly to issues of both liability and personal jurisdiction." *Id.* at *1.

M-I filed timely objections to the R&R asserting that (1) its action was not exceptional enough to warrant attorney fees under § 285, and (2) even if its action was exceptional, DAI's culpable conduct during the litigation negates recovering any award. (*See* Pls.' Objs. to R&R ("Objs."), Feb. 17, 2017, Docket No. 275.)

Because M-I relied upon insufficient evidence to support its detailed allegations in the 2014 complaint and 2015 amended complaint, the Court will overrule M-I's objections, adopt the R&R, and award attorney fees and costs to DAI.

## BACKGROUND

## I.   THE 2013 COMPLAINT: DISMISSED BASED UPON AN ALTER EGO THEORY OF LIABILITY

M-I is a petroleum services company based in the United Kingdom.  (Compl. ¶¶ 2, 4, Nov. 25, 2014, Docket No. 1.)  M-I also has a sister company named M-I Swaco do Brasil-Comerico, Servicos E Mineracao Ltda. ("M-I Brazil").  *M-I Drilling Fluids*, 2014 WL 494680, at *1.   DAI is a Minnesota corporation principally located in St. Paul, Minnesota.  (Compl. ¶ 3.)  DAI is the 51% majority owner of Dynamic Air Limitada ("Limitada"), a Brazilian company.  (Decl. of Todd S. Werner ("Werner Decl."), Ex. 14 ¶¶ 1, 2, 10, June 3, 2016, Docket No. 231.)

In late 2011 or early 2012, Petróleo Brasileiro ("Petrobras"), a nonparty petroleum company organized under Brazilian law with its principal place of business in Brazil, sought design proposals for a pneumatic conveyance system designed to transport waste rock, sand, and other materials from a drill on an offshore oil platform to a ship.  *M-I Drilling Fluids*, 2014 WL 494680, at *1.  M-I Brazil and Limitada both submitted bids

for the project, which Limitada won.  *Id.*  Limitada proceeded to design and operate at least three of these systems for Petrobras.  *Id.*

In 2013, M-I sued DAI and Limitada, alleging that Limitada "**along with [DAI]** designed, sold and operated [] a system" which infringed five patents held by M-I.  *Id.* at *5.  To attempt to show liability on DAI's part, M-I argued that Limitada was the "alter ego" of DAI and that the corporate veil should be pierced.  *Id.* at *2.

The Court nevertheless found the complaint to be factually insufficient as to DAI, noting that:

> M–I does not establish prima facie evidence of an alter ego relationship between Defendants.  M–I's only evidence is two printouts of [DAI's] website, on which [Limitada] is listed as an 'international office' for Brazilian sales.  While website statements regarding a corporate relationship may be relevant to alter ego analysis, M–I's evidence standing alone does not demonstrate sufficient control or dominance over [Limitada].

*Id.* at *4 (internal citation omitted).  The court also noted that "[o]n its face, the Complaint fails to plausibly identify conduct by [DAI] that has allegedly infringed the patents in suit."  *Id.* at *5.  The Court therefore dismissed M-I's infringement claims without prejudice.  *Id.* at *6.

## II.     THE 2014 COMPLAINT: M-I ALLEGES DIRECT, INDUCED, AND CONTRIBUTORY INFRINGEMENT

In 2014, M-I again sued DAI, this time with more detailed allegations of "direct, induced, and/or contributory infringement of [five] patents owned by M-I." (Compl. ¶ 1.) As part of that complaint, M-I alleged that DAI was "engaging in acts constituting infringement under 35 U.S.C. § 271." (*Id.* ¶ 42.)  Although the complaint makes

allegations under § 271 generally, a careful review suggests purported liability under § 271(a), (b) and (c). (*Id.* ¶¶ 42-44.)  In the complaint, M-I alleged that Limitada won the bidding process with Petrobras but that Limitada was unequipped to complete the contract, and thus signed it jointly with DAI as its "partner" in the project. (*Id.* ¶¶ 18-19.) Thereafter, the complaint alleged, DAI provided Limitada with infringing devices ("Accused Systems"), which were then installed on two U.S. ships. (*Id.* ¶¶ 18-21.)  To support these claims M-I alleged the following facts ("the Sixteen Detailed Allegations"):

- "DAI directed the design, manufacture and installation of . . . systems for Petrobras . . . ." (*Id.* ¶ 19.)

- "DAI then directed that [Limitada] install these . . . systems aboard at least two U.S.-flagged ships . . . ." (*Id.* ¶ 20.)

- "DAI provided and continues to provide onsite support . . . including supervising and assisting in the installation and startup of the systems aboard the two U.S.-flagged ships." (*Id.* ¶ 21.)

- "The Accused Systems are operated on the U.S.-flagged ships either directly by DAI or under the direction and supervision of DAI." (*Id.* ¶ 22.)

- "[T]he Accused Systems were manufactured, sold, delivered and installed," and "[t]hese activities were either performed directly by DAI or at the direction of DAI." (*Id.* ¶ 23.)

- "[T]he Accused Systems were then used . . . in an infringing way" and "[t]hese activities were either performed directly by DAI or at the direction of DAI." (*Id.* ¶ 24.)

- "DAI provided the conception and design of the . . . system and additionally supervised and assisted with its manufacture and installation aboard the U.S.-flagged HOS Resolution." (*Id.* ¶ 25.)

- "DAI employees visited the system to assist and supervise its manufacture and installation." (*Id.*)

- "DAI employees continue to visit the system aboard the U.S.-flagged HOS Resolution and provide instructions for its use. During these visits, DAI employees use the system." (*Id.*)

- "[A] similar Accused System was manufactured, sold, delivered and installed aboard the . . . Pinnacle" and "[t]hese activities were either performed directly by DAI or at the direction of DAI." (*Id.* ¶ 26.)

- "DAI directly or indirectly designed, provided and ultimately operated the . . . system on the . . . Pinnacle" and "DAI provided the conception and design of the . . . system and additionally supervised and assisted with its manufacture and installation aboard the . . . Pinnacle." (*Id.* ¶ 27.)

- "DAI designed, sold, installed and began operating an infringing Accused System aboard the . . . Resolution" and "this system has been continuously located and operated directly by or under the direction of DAI aboard the . . . Resolution." (*Id.* ¶ 35.)

- "DAI designed, sold, installed and began operating an infringing Accused System aboard the . . . Pinnacle," "this system has been continuously located and operated directly by or under the direction of DAI aboard the . . . Pinnacle," and "DAI provided the technology and design parameters for this system and worked directly or indirectly on its manufacture, installation, and use." (*Id.* ¶ 36.)

- "[Limitada] lacks the information, experience and know-how to perform the conduct that infringes the Asserted Patents absent DAI's direction. In addition, [Limitada] is supervised at a close level by DAI . . . ." (*Id.* ¶ 46.)

- "DAI has specifically instructed end users to operate the Accused Systems . . . in an infringing way . . . ." (*Id.* ¶¶ 57, 74, 91, 108, 125.)

- "DAI designed the Accused Systems and instructed [Limitada] on how to manufacture and install the infringing Accused Systems." (*Id.* ¶¶ 58, 75, 92, 109, 126.)

To support these allegations, M-I asserts it conducted a pre-suit investigation and found the following pieces of evidence supported the Sixteen Detailed Allegations:

- An English translation of the contract between Petrobras and Limitada [that] refers to Limitada "having as partner(s) DYNAMIC AIR, INC." (Pivnick Decl., Ex. B at 2.)

- DAI's website indicated that Limitada was a DAI sales office in Brazil.  (*See* Werner Decl., Ex. 26 at 2-3.)

- Employees operating the Accused Systems wore "Dynamic Air" coveralls. (Pivnick Decl. ¶ 19.)

- M-I had knowledge that Limitada had never designed a system to convey drill cuttings.  (*Id*.)

(*See* R&R at 19-20) (stating same).  M-I also relied upon two of these factual bases in the 2013 Minnesota case, namely, the website statements, *M-I Drilling Fluids*, 2014 WL 494680, at *4 ("M–I's only evidence is two printouts of [DAI's] website . . . ."), and the assertion that Limitada (and DAI) had never designed such systems, *id*. at *2 ("M–I alleges Defendants had never previously designed or sold such systems . . . .").

## III.   INITIAL DISCOVERY

In its answer, DAI stated it had "not directed or otherwise controlled any activities of [Limitada] related to its contract with Petrobas."  (Answer, Affirmative Defenses & Countercl. at 14, May 27, 2015, Docket No. 36.)   DAI maintained this position in answers to interrogatories.  (Werner Decl., Ex. 27 at 5.)   Thereafter, M-I deposed DAI's president and corporate designee, James Steele, on August 19, 2015.  (Pivnick Decl. ¶ 5.) Steele testified that he had no knowledge of any communication between anyone at DAI and Limitada regarding the design of the Accused Systems, and that no DAI employees had participated in, nor had any knowledge of Limitada's manufacture, maintenance or service of the equipment.  (Decl. of Scott Pivnick in Supp. of Mem. in Opp'n to Pls.' Mot., Ex. 3 at 61:3-62:1, Oct. 20, 2015, Docket No. 151.)   Consistent with this testimony,

Limitada's president, Horacio Paez, filed a declaration stating that the Accused Systems "were designed, manufactured, and marketed in Brazil, without input or guidance from [DAI]." (Pivnick Decl., Ex. K ¶ 15.) Shortly thereafter, DAI requested permission to file a motion for summary judgment, as the Pretrial Scheduling Order required advance permission for such a motion. (Pretrial Scheduling Order at 13, July 13, 2015, Docket No. 44.) The Magistrate Judge denied DAI's request on the ground that discovery was not yet complete. (Order Den. Def.'s Req. to File Mot. for Summ. J., Sept. 29, 2015, Docket No. 122.)

## IV.    THE 2015 AMENDED COMPLAINT

On October 22, 2015, M-I filed a motion to amend its complaint, seeking to "[a]dd infringement allegations against DAI under 35 U.S.C. § 271 (f)(1) and (2)," "[a]dd allegations regarding DAI's liability for its subsidiary [Limitada]'s infringement under 35 U.S.C. § 271(a)," and "[r]emove  certain infringement allegations against DAI under 35 U.S.C. § 271(a)." (Pls.' Mot. for Leave to Amend at 1, Oct. 22, 2015, Docket No. 154.) Because the Court rejected M-I's alter ego theory in 2013, the court refused to permit amendments to the complaint based on that theory.   (Civil Mot. Hr'g Mins. at 2, Nov. 6, 2015, Docket No. 169.) The Court otherwise granted M-I's motion to amend. (*Id.*) The amended complaint filed by M-I removed the Sixteen Detailed Allegations, and instead alleged that the parts supplied by DAI to Limitada had "no substantial non-infringing uses." (*See* Am. Compl., ¶¶ 40, 46, 55, 63, 72, 80, 89, 97, 106, 114, 123, Nov. 13, 2015, Docket No. 173.) In addition, M-I alleged that DAI was "supplying or

causing to be supplied from the United States a substantial portion of the components of the Accused Systems in such manner as to actively induce the combination of such components in Brazil in a manner that would infringe the Asserted Patents if such combination occurred within the United States." (*Id.* ¶ 42.)

In opposition to the motion for attorney fees now before the Court, M-I asserts that it had obtained new facts to support its new claims. (Pls.' Mem. in Opp'n to Def.'s Mot. for Att'y Fees ("Pls.' Mem. in Opp'n") at 26-27, June 24, 2016, Docket No. 245.) Those facts are:

- Design drawings of the accused systems which had printed on them, "This design is the property of [DAI], which declares its property rights over the material delivered." (Pivnick Decl., Ex. D at MI00009703; *see also id.*, Ex. C.)

- Brochures regarding components that DAI had supplied to Limitada, which M-I believed could have been incorporated into the Accused Systems. (Decl. of Adam D. Swain ¶ 2, Oct. 22, 2015, Docket No. 157.)

## V.   ADDITIONAL DISCOVERY AND VOLUNTARY DISMISSAL

In February 2016, having resolved a number of litigation disputes, M-I deposed DAI's corporate designee a second time. (Pivnick Decl. ¶ 16.) Not long after this, M-I elected to cease litigation against DAI, though it maintained that it had sufficient evidence to proceed to trial and that the reason for the cessation was that establishing liability at trial would be too difficult. (Pls.' Mem. in Opp'n at 2, 21.)

The parties attempted to negotiate a settlement whereby M-I would release all claims against DAI and sign a covenant not to sue DAI in the future on the contested patents. They managed to agree on a release and covenant not to sue, but they could not

reach consensus on the terms of a stipulation of dismissal, whether the dismissal would be with prejudice, and whether the DAI would have the right to seek attorney fees or sue for antitrust violations in the future.  This deadlock led M-I to file a motion to dismiss without prejudice, which the Court granted on September 19, 2016.  (*See* Mem. Op. & Order Granting Mot. to Dismiss, Sept. 19, 2016, Docket No. 268.)  DAI now seeks to recover attorney fees, expert witness fees, and costs, pursuant to 35 U.S.C. § 285, 28 U.S.C. § 1927, and the Court's inherent powers.

## DISCUSSION

## I.   STANDARD OF REVIEW

Upon the filing of a report and recommendation by a magistrate judge, a party may "serve and file specific written objections to the proposed findings and recommendations."  Fed. R. Civ. P. 72(b)(2); *accord* D. Minn. LR 72.2(b).  "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."   Fed. R. Civ. P. 72(b)(3).  Thus, the Court will review M-I's objections *de novo*.

35 U.S.C. § 285 provides, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  In *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, the Supreme Court explained that "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  134 S. Ct. 1749, 1756 (2014).  Determining whether a

given case is exceptional under the statute is "a simple discretionary inquiry; it imposes no specific evidentiary burden, much less such a high one. . . .   [It is g]overned by a preponderance of the evidence standard." *Id.*  at 1758.

## II.    EXCEPTIONALITY

M-I objects to the R&R on three grounds.  First, it avers that the R&R analyzed the wrong amended complaint.  (Objs. at 6.)  Second, M-I objects that the report fails to credit M-I for deleting the Sixteen Allegations in response to the discovery process.  (*Id.* at 8.)  Finally, it asserts that the R&R improperly applies the *Octane Fitness* standard described above.  (*Id.*)

### A.    The *Octane Fitness* Standard

The *Octane Fitness* standard asks if, considering the totality of the circumstances, a case is "so 'exceptional' as to justify an award of fees."  *Octane Fitness*, 134 S. Ct. at 1757.   When a court considers the "totality of the circumstances" it may consider "'factors,' including 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'"  *Id.*  at 1756 & n.6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)).  The requirements of Fed. R. Civ. P. 11 are part of the "totality of the circumstances" that the court uses in its analysis.  *See id.*

Parties have a duty to adequately investigate their claims before filing suit in federal court. Parties' submission to the court be supported by "information, **and**

belief, formed after an inquiry reasonable under the circumstances." Fed. R. Civ. P. 11(b) (emphasis added). While the standard for sanctions under Rule 11 is very high, nevertheless, in patent law "sanctionable conduct is not the appropriate benchmark. . . . [A] district court may award fees in the rare case in which a party's unreasonable conduct – while not necessarily independently sanctionable – is nonetheless so 'exceptional' as to justify an award of fees." *Octane Fitness*, 134 S. Ct. at 1756-57. Therefore, an inadequate pre-filing investigation, which may not be grounds for Rule 11 sanctions, might still be sufficient to support an award of fees under § 285.[2]

Thus, the Court will examine the factual basis for the allegations in M-I's 2014 complaint to determine if M-I acted with "objective unreasonableness" in pleading unsupported allegations.[3] *Id.* at 1756 n.6. As noted previously, M-I identifies four pieces of evidence upon which it relied to make the Sixteen Detailed Allegations in its complaint.

---

[2] *See Lumen View Tech. LLC v. Findthebest.com, Inc.*, 811 F.3d 479, 481 (Fed. Cir. 2016) (affirming in relevant part a district court's grant of attorney fees under § 285 where the judge found the plaintiffs "pre-suit investigation" to be inadequate); *see also Sonix Tech. Co. v. Publications Int'l, Ltd.*, No. 13-2082, 2016 WL 1569410, at *3 (N.D. Ill. Apr. 19, 2016) (considering a plaintiff's "pre-filing investigation" as part of a § 285 determination); *Yufa v. TSI Inc.*, No. 09-1315, 2014 WL 4071902, at *3 (N.D. Cal. Aug. 14, 2014) ("One consideration is the adequacy of Plaintiff's pre-filing investigation. . . . [T]hat Plaintiff did not conduct an adequate investigation prior, at the very least, to filing his first amended complaint, . . . weighs in favor of finding that this case is exceptional"); *CreAgri, Inc. v. Pinnaclife, Inc.*, No. 11-6635, 2014 WL 2508386, at *6 (N.D. Cal. June 3, 2014) ("[T]he adequacy of pre-filing investigation is a factor that the Court considers in its § 285 analysis.").

[3] M-I does not object to the R&R's finding that M-I lacked sufficient factual basis for the allegations in the amended complaint filed in 2015. (R&R at 30-31.) The Court therefore adopts this recommendation in the R&R without further discussion.

First, M-I names the contract between Petrobras and Limitada, which indicates that Limitada had "as partners" DAI and Hugo Paez.  (*See* Objs. at 10-11.)  This evidence, however, does lend support to the Sixteen Detailed Allegations in the complaint.  The contract indicates that Mr. Paez and DAI **own** Limitada, not that they are obligated to perform or help perform the contract requirements.  The document itself expressly refers to Petrobras and Limitada as the "Parties."  (Pivnick Decl., Ex. B. at 1.) M-I already knew – from the 2013 Minnesota case[4] – that DAI was majority owner of Limitada; the contract provides no new evidence on which M-I might have relied to make the Sixteen Detailed Allegations.  The contract provides no reasonable basis to assert, for example, that "DAI designed, sold, installed and began operating an infringing Accused System aboard the . . . Pinnacle."  (Compl. ¶ 36.)  M-I's attempt to read the contract to support the idea that it placed obligations upon DAI is strained at best.

Second, M-I relies on the fact that Limitada's website identifies Limitada as the "Brazil Sales office" for DAI.  (*See* Objs. at 11.)  This too, provides no substantive support for the allegations in the complaint.  Importantly, M-I relied on this fact in the 2013 Minnesota case and the court held it was an insufficient basis on which to maintain suit against DAI as Limitada's alter ego.  *M-I Drilling Fluids*, 2014 WL 494680, at *4

---

[4] The Court disagrees with M-I that it is "improper" to consider the dismissal of the 2013 Minnesota case as part of its exceptionality determination. (Objs. at 13 n.3.)  *Octane Fitness* expressly invites district courts to use their discretion to consider the "totality of the circumstances."  134 S. Ct. at 1756.  The basis for the 2013 Minnesota case – and the court's disposition of it – is important to understanding the factual landscape of this case, especially because, as noted previously, M-I recycled some of its factual basis from the 2013 Minnesota case to support its Sixteen Detailed Allegations in the 2014 action.

("While website statements regarding a corporate relationship may be relevant to alter ego analysis, M–I's evidence standing alone does not demonstrate sufficient control or dominance over [Limitada]. . . . M–I acknowledges that [Limitada] separately bid for and won the Petrobras RFP process, and that [Limitada] has its own employees and independent headquarters in Brazil."). The Court concluded that "alter ego liability ha[d] not been sufficiently alleged to justify piercing the corporate veil and exposing [DAI] to infringement liability." *Id.* Given that this piece of evidence was not enough to support the barebones allegations in the 2013 Minnesota case, it cannot be said that it now lends better support to the Sixteen Detailed Allegations.

M-I next relies on its knowledge that Limitada had never before designed systems like the Accused Systems. (*See* Objs. at 7.) However, this evidence is insufficient to support the Sixteen Detailed Allegations, as M-I's 2013 complaint alleged that "[o]n information and belief, **neither [DAI] nor [Limitada] had ever designed** a pneumatic conveyance system for the transfer of drill cuttings prior to this." (Compl. ¶ 24, Aug. 30, 2013, Case No. 13-2385, Docket No. 1 (emphasis addded).) M-I has not provided the Court any information contrary to its previous opinion that neither DAI nor Limitada had experience with these systems. As a result, there is no indication that DAI would necessarily need to be involved with the Accused Systems when they had no more

knowledge and experience than Limitada and offers no reasonable support to the Sixteen Detailed Allegations.[5]

Finally, M-I notes that employees working on the Accused Systems wore coveralls that read "Dynamic Air." (*See* Objs. at 12.) M-I asserts that it would be "equally reasonable" to believe that these coveralls were worn by employees of DAI and Limitada. (*Id.*) The Court does not agree that it is equally reasonable to believe that employees working on a ship in Brazilian waters on a Brazilian contract signed by a Brazilian company are as likely to be from the United States as from Brazil. The reasonableness of this inference is further undercut by the 2013 Minnesota case. In the 2013 complaint, M-I alleged Limitada "was the winner of the bidding process, and, upon information and belief**,** thereafter **along with [DAI]** designed, sold and operated such a system on the HOS Resolution." *M-I Drilling Fluids*, 2014 WL 494680, at *5 (emphasis in original). In the 2013 Minnesota case, the court found that this evidence was not enough "to state a plausible claim against [DAI]." *Id*. M-I was on notice that it needed more than supposition and bare allegations to support its claims. As the R&R notes, M-I does not indicate that it "took the most rudimentary additional investigative steps of inquiring about who employed those workers, or even taking note of whether they were speaking English or Portuguese." (R&R at 24.) Thus, it cannot be said that this bare allegation lends support to the Sixteen Detailed Allegations.

---

[5] That "DAI had been in the industry since 1969," (Objs. at 12), is no indication of expertise or experience with products like the Accused Systems. This is especially true given M-I's reliance on DAI's inexperience in its 2013 complaint in this matter.

Taken together these four pieces of information do not provide any reasonable basis to assert, for example, that "DAI directly or indirectly designed, provided and ultimately operated the . . . system on the . . . [ship called the] Pinnacle." (Compl. ¶ 27.) After the 2013 Minnesota case was dismissed, the only new evidence on which DAI purports to have relied in pleading the 2014 complaint was the text of the contract and the coveralls of workers with the Accused Systems. It is objectively unreasonable to assert that these quanta of evidence support the inference that an American entity was extensively involved with the Accused Systems as M-I alleged.

This conclusion is further supported by the fact that discovery during the 2013 Minnesota case had provided M-I with information that potentially undermined its basis for pleading the 2014 complaint. In April and June of 2013, M-I performed on-site inspections of the Accused Systems. Photographs from those inspections reveal signs on the equipment reading, in Portuguese, "[d]esigned and manufactured in Brazil." (Werner Decl., Exs. 19 & 20.) This information weighs against the Sixteen Detailed Allegations. If the systems were designed and manufactured in Brazil, it would tend to make the idea that, for example, "DAI provided the conception and design of the . . . system and additionally supervised and assisted with its manufacture and installation aboard the . . . Resolution" a less reasonable averment. (Compl. ¶ 25.)

The Court finds that the "information" upon which M-I based its 2014 complaint was not strong enough to reasonably support its "belief" in the Sixteen Detailed

Allegations.[6]  *See* Fed. R. Civ. P. 11(b).   M-I's pre-filing investigation was not "reasonable under the circumstances" and therefore the case is properly deemed exceptional under 35 U.S.C. § 285.  *Id.*  Additionally, the "substantive strength" of M-I's litigation was exceptionally low because it pleaded facts that an objectively reasonable party would not, or should not plead.[7]  *See Octane Fitness*, 134 S. Ct. at 1756 & n.6.

---

[6] M-I raises three other factors which it says "support M-I's good faith belief that DAI was fully involved with the Accused Systems."  (Objs. at 13.)  However, in a sworn declaration, M-I's counsel represented to the Court that it relied on the four facts described above as basis for the 2014 complaint.  (Pivnick Decl. ¶ 19.)  That declaration makes no mention of the "other factors" listed in the objections.  (Objs. at 13.)  Therefore, the Court declines to consider new factors as support for allegations in the 2014 complaint.  Even if the Court considered such factors, it would not salvage M-I's objections.  Two of the additional facts – that DAI is the majority owner of Limitada and that DAI and Limitada have products that share logos and trade names – are equivalent to M-I's arguments based on DAI's website, coveralls, and contract, which the Court has already considered.  (*Id.*)  The final fact, that Limitada has allegedly admitted that it produces equipment "using technology of [DAI]," cannot be located by the Court.  (*Id.*)  M-I points to no place in the record supporting the admission, and the only place the Court can locate it is in an interrogatory response **written by M-I.**  (Werner Decl., Ex. 26 at 3.)  The Court cannot be expected to lend much weight to evidence that M-I fails to locate and identify.

[7] M-I also argues that after filing it found another piece of evidence that supported its "good faith belief that DAI infringed the Asserted Patents."  (Objs. at 14.)  It found design drawings which stated in Portuguese that the "[t]his design is the property of [DAI], which declares its property rights in the material delivered." (*Id.* at 14-15.)  Evidence found after filing is not the basis for the Court's exceptionality finding.  As previously explained, the Court bases its finding of exceptionality on M-I's failure to properly investigate its claims before filing suit.  Even if these drawings had been part of M-I's pre-filing investigation, the Court agrees with the Magistrate Judge that it would not "add enough" because it is, at best, ambiguous as to DAI's involvement, as the evidence is in Portuguese and has Limitada's address on it.  (*See* R&R at 29.)  Therefore, an equally likely inference about these drawings might be that Limitada is not disciplined about what incorporation term it describes itself with, which seems to bear out in later discovery.  (*See, e.g.,* Pivnick Decl., Ex. I at 240:2-18.)  Even read in its best light, nothing about the drawings would provide DAI sufficient basis to plead the Sixteen Detailed Allegations in the complaint.

**B.    The R&R Analyzed the Correct Amended Complaint**

M-I objects that "the most significant error in the Report" is that the Magistrate Judge examined the wrong amended complaint, and therefore "the Report contains a significant mistake of fact and should be rejected in its entirety." (Objs. at 6-7.)  M-I's assertion is that the R&R refers to M-I's attempts to add claims under 35 U.S.C. § 271(f)(1) and (2), when the final amended complaint only contains claims under § 271(f)(1).  (R&R at 11-13.)   The record flatly contradicts this objection.   When M-I moved to amend the complaint, it requested leave to add claims under §271(f)(1) **and** (2). (Mem. in Supp. of Mot. for Leave to Amend Compl. at 1, Oct. 22, 2015, Docket No. 156.)  The court denied the motion to add claims under (f)(2) because, as the R&R notes, "the Court had already rejected M-I's alter ego theory and denied jurisdictional discovery on that issue in the 2013 Minnesota case."  (R&R at 12-13.)

Furthermore, the analysis in the R&R discusses the lack of foundation for M-I's claims that the supplied components had "no substantial non-infringing uses" and that DAI had "actively induce[d]" infringement on the part of Limitada – both allegations found in the amended complaint filed after the motion to amend.  (*See* Am. Compl. ¶¶ 40, 42; R&R at 30-31.)  The R&R does not provide any specific analysis on § 271(f)(2) other than to suggest that the court had already rejected that reasoning.  (*See* R&R at 30-32.) The Court finds there is no mistake of fact in the R&R.[8]

---

[8] Even if the R&R had considered the wrong amended complaint, the ensuing analysis in the R&R applies equally to the proposed claims under 271(f)(1) and (2) and any error would be

(Footnote continued on next page.)

**C.     The Subsequent Deletion of the Sixteen Allegations in the Amended Complaint Does Not Undercut the Exceptionality Determination**

M-I next objects that the R&R fails to credit M-I for deleting the Sixteen Allegations in response to the discovery process.  (Objs. at 8.)  M-I argues that it "did not blindly pursue its claims in the face of DAI's denials as the Report alleges."  (*Id.*)  There are two problems with this objection.

First, the R&R does not base its exceptionality determinations on the idea that M-I "blindly pursue[d] its claims in the face of DAI's denials."  (*Id.*)  The R&R faulted the sufficiency of M-I's pre-filing investigation, and recommended finding that the evidence in M-I's possession was insufficient to support its allegations in its complaint and amended complaint.  That M-I dismissed the claims after conducting discovery is of no consequence in this case.  The duty to properly investigate claims before filing a complaint is distinct from the duty to cease pursuing claims that discovery reveals to be meritless.  Rule 11 requires that a party conduct a reasonable investigation of the factual and legal basis for his claim before filing.  "To constitute a reasonable inquiry, the prefiling investigation must uncover a factual basis for the plaintiff's allegations, as well as a legal basis."  *Coonts v. Potts*, 316 F.3d 745, 753 (8th Cir. 2003); *Cf. Antonious v. Spalding & Evenflo Cos.,* 275 F.3d 1066, 1072 (Fed. Cir. 2002) ("[C]laim construction is

_____

(Footnote continued.)

harmless.  (*See* R&R at 30-32.)  Furthermore, the objections fail to identify any prejudice resulting from the error, assuming *arguendo*, the allegations were true.

a matter of law, an attorney's proposed claim construction is subject to the Rule 11(b)(2) requirement that all legal arguments be nonfrivolous.  We apply the law of the pertinent regional circuit when reviewing the imposition of Rule 11 sanctions.").

M-I argues parties should be encouraged to voluntarily dismiss claims and to amend complaints after pursuing discovery.  However, what makes the Sixteen Detailed Allegations exceptional is not merely that they were pursued until discovery revealed them to be baseless, it is that the evidence upon which M-I relied in its 2014 complaint was not sufficient to permit a reasonable party to plead those allegations.  The Magistrate Judge explained this rationale very clearly in the R&R:

> There is no question that courts want to encourage parties to evaluate and re-evaluate their positions in light of new information, and to settle or dismiss cases as appropriate.  But courts have at least as great an interest in assuring that would-be plaintiffs conduct an adequate pre-suit investigation and allege only those "facts" for which there is a reasonable basis not only in **belief** but in **information**.

(R&R at 32.)  The exceptionality of this case flows from M-I's failure to perform enough investigation and produce enough "information" to support its "belief" in the Sixteen Detailed Allegations.  *See* Fed. R. Civ. P. 11(b).[9]  Thus, the Court will adopt the R&R's

---

[9] M-I makes several other objections that are not relevant here.  First, M-I asserts that it was entitled to seek discovery on its claims.  (Objs. at 17.)  To the extent that the claims were properly pleaded, the Court would agree with this point.  However, the Court bases its exceptionality determination of the inadequacy of M-I's pre-filing investigation.  For this reason, M-I's other objections – that its claims would have survived summary judgment and the parties' litigation conduct – are rendered moot.  M-I also claims that this case does not sufficiently "stand out" to merit an exceptionality determination because the court has not compared this case to "another case to show why this case is 'rare.'"  (*Id.* at 22.)  However, the *Octane Fitness* standard asks the Court to engage in a "simple discretionary inquiry," *Octane Fitness*, 134 S. Ct. at 1758, which is what this Court and the Magistrate Judge have done.

recommendation to award DAI attorney fees under § 285 and costs under Fed. R. Civ. P. 45.[10]

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, the Court **OVERRULES** M-I's objections [Docket No. 275] and **ADOPTS** the Report and Recommendation of the Magistrate Judge dated February 3, 2017 [Docket No. 270]. Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion for Attorney Fees Expert Witness Fees, and Costs [Docket No. 228], is **GRANTED in part** and **DENIED in part** as follows:

1.    Defendant's motion is **GRANTED** with regard to attorney fees and costs.

2.    Defendant's motion is **DENIED** with regard to expert witness fees.

3.    Defendant shall file a motion for attorney fees and costs supported by affidavit and time records **within fourteen (14) days from the date of this Order.**

DATED:   March 30, 2017                                            s/ John R. Tunheim
at Minneapolis, Minnesota.                                    JOHN R. TUNHEIM
                                                                             Chief Judge
                                                               United States District Court

---

[10] As DAI did not object to the R&R, the Court will not impose any other sanctions. Furthermore, as M-I objected to the award of attorney fees but did not explicitly object to an award of costs, the Court adopts the R&R's conclusion regarding costs.